## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON MCCALL,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br><br>OBALON THERAPEUTICS, INC.,<br>ANDREW RASDAL, KIM KAMDAR,<br>RAYMOND DITTAMORE, DOUGLAS<br>FISHER, LES HOWE, SHARON<br>STEVENSON, and WILLIAM<br>PLOVANIC,<br><br>　　　　　　Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS<br>OF THE FEDERAL SECURITIES<br>LAWS**<br><br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Jason McCall ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Obalon Therapeutics, Inc. ("Obalon" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Obalon and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Obalon and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to ReShape Lifesciences Inc. ("ReShape") (the "Proposed Transaction").

2.      On January 19, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with ReShape.   Pursuant to the terms of the Merger Agreement each share of ReShape will be converted into the right to receive a currently undetermined number of Obalon shares ("Merger Consideration"). The special meeting of Obalon's shareholders to vote on the Proposed Transaction is scheduled to be held on May 13, 2021.

3.      On April 13, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Obalon and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.   Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Obalon shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Obalon shares.

9.      Defendant Obalon is incorporated under the laws of Delaware and has its principal executive offices located at 5421 Avenida Encinas, Suite F, San Diego, CA, 92008. The Company's common stock trades on the NASDAQ under the symbol "OBLN."

10.     Defendant Andrew Rasdal ("Rasdal") is and has been a director of Obalon, Chief Executive Officer ("CEO"), and Chair of the Board at all times during the relevant time period.

11.     Defendant Kim Kamdar ("Kamdar") is and has been a director of Obalon at all times during the relevant time period.

12.     Defendant Raymond Dittamore ("Dittamore") is and has been a director of Obalon at all times during the relevant time period.

13.     Defendant Douglas Fisher ("Fisher") is and has been a director of Obalon at all times during the relevant time period.

14.     Defendant Les Howe ("Howe") is and has been a director of Obalon at all times during the relevant time period.

15.     Defendant Sharon Stevenson ("Stevenson") is and has been a director of Obalon at all times during the relevant time period.

16.     Defendant William Plovanic ("Plovanic") is and has been a director of Obalon at all times during the relevant time period. Individual Defendant Plavanic resigned from his position as President and CEO of Obalon in June of 2020. He is also an equity research analyst at Canaccord.

17.     Defendants Rasdal, Kamdar, Dittamore, Fisher, Howe, Stevenson, and Plovanic are collectively referred to herein as the "Individual Defendants."

18.     The Individual Defendants, along with Defendant Obalon, are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

19.     Obalon is a vertically integrated medical device company focused on developing and commercializing innovative medical devices to treat people with obesity. Obalon's current product offering is the Obalon Balloon System, the first and only FDA approved swallowable, gas-filled intragastric balloon designed to provide progressive and sustained weight loss in patients with obesity. The Obalon Balloon System is FDA approved for temporary use to facilitate weight loss in adults with obesity having a body mass index,

or BMI, of 30 to 40, or approximately 30 to 100 pounds overweight, who have failed to lose

weight through diet and exercise.

### The Company Announces the Proposed Transaction

20.     On January 20, 2020, the Company jointly issued a press release announcing the

Proposed Transaction.  The press release stated in part:

> SAN CLEMENTE, CA / ACCESSWIRE / January 20, 2021 / ReShape
> Lifesciences Inc. (OTCQB:RSLS), a global weight-loss solutions leader,
> announced today that it has entered into a definitive merger agreement with
> Obalon Therapeutics, Inc., which is listed on the NASDAQ Capital Market, a
> company focused on developing and commercializing novel technologies for
> weight loss, under which ReShape and Obalon will combine in an all-stock
> transaction.
>
> Under the terms of the merger agreement that has been unanimously approved by
> the boards of directors of both companies, existing ReShape stockholders will
> have majority ownership of the combined company immediately following the
> closing of the merger and Obalon will be renamed ReShape Lifesciences Inc. and
> will trade under the NASDAQ ticker symbol "RSLS." The current directors and
> officers of ReShape will comprise the board of directors and executive
> management of the combined company.
>
> ReShape and Obalon have delivered some of the most innovative FDA-approved
> weight loss solutions for the treatment of obesity. According to a recent article in
> the New England Journal of Medicine, the past 50 years have seen increasing
> attention to the issue of obesity[1], citing the World Health Organization's current
> data showing that global prevalence of obesity has tripled since the mid-1970s
> with more than 1 billion adults being overweight in addition to 650 million adults
> and 124 million children and adolescents being obese. This has tremendous
> impact on health and health related costs globally as obesity is responsible for
> 41% of uterine cancers; more than 10% of gallbladder, kidney, liver, and colon
> cancers; 40% of cases of cardiovascular disease; and most cases of type 2
> diabetes.2 Further relevant in today's world, SARS-CoV-2 infection (COVID-19)
> is more likely to cause serious illness or death in people with obesity than in those
> with a healthier body-mass index.3
>
> Bart Bandy, President and Chief Executive Officer of ReShape commented, "We
> are excited with this opportunity to add Obalon's FDA approved Balloon System
> to ReShape's line of minimally invasive weight-loss solutions while also
> expanding our market reach. Our portfolio also includes the Lap-Band®,
> emerging products that support bariatric surgical procedures across the spectrum

and ReShapeCareTM, which is our reimbursed, telehealth-based patient support program that is available for any medically supervised weight loss program. This integration positions us to achieve our goals for growth and continued advancement towards becoming the premier weight loss company for physicians and patients."

\*     \*     \*

Maxim Group LLC is serving as financial advisor to ReShape in connection with the transaction and Fox Rothschild LLP is acting as its legal counsel.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

21.     On April 13, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

22.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Company's Financial Projections

23.     The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

24.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such

projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

25.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

26.     Specifically, concerning the "Obalon Adjusted ReShape Projections," the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including Unlevered Free Cash Flow.

27.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.  Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Canaccord's Financial Opinion**

28.     The Proxy Statement contains the financial analyses and opinion of Canaccord Genuity LLC ("Canaccord") concerning the Proposed Transaction, but fails to provide material information concerning such.

29.     The Proxy Statement discloses that in connection with its fairness opinion, Canaccord was provided and "reviewed certain projected cash and other estimates and data" of Obalon by the Company's management.  Despite the materiality of these projections provided by management, the Proxy Statement omits these projections in their entirety. The Omitted Projections must be disclosed so that shareholders can make a fully informed decision when voting on the Proposed Transaction.

30.     With respect to Canaccord's *Obalon Publicly Traded Comparable Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

31.     With respect to Canaccord's *ReShape Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Canaccord's selection of the terminal perpetual growth rate ranging from 1.0% to 4.0%; and (ii) the components underlying the weighted average cost of capital of the publicly traded companies, used by Canaccord to derive the discount rate ranging from 18.6% to 20.6%.

32.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to

better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

33.     Without the above-described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37.    Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

38.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

39.    The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

40.    The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

41.    The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing

materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

42.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

43.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of Obalon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Obalon, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially

incomplete and misleading.

46.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

48.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 19, 2021                                    Respectfully submitted,

                                                          By: */s/ Joshua M. Lifshitz*
                                                          Joshua M. Lifshitz
                                                          Email: jml@jlclasslaw.com
                                                          **LIFSHITZ LAW FIRM, P.C.**
                                                          1190 Broadway
                                                          Hewlett, New York 11557
                                                          Telephone: (516) 493-9780
                                                          Facsimile: (516) 280-7376

                                                          *Attorneys for Plaintiff*